UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.B., individually and on behalf of
K.B., a child with a disability,

                *Plaintiff,*

  -against-

NEW YORK CITY
DEPARTMENT OF EDUCATION,

                *Defendant.*

DECLARATION

Case No. 1:22-cv-6405-JPC-SN

---

    BENJAMIN M. KOPP declares, under penalty of perjury, that the following is true and correct:

1.     I am the attorney assigned to Plaintiff M.B.'s case at Cuddy Law Firm, P.L.L.C., and make this declaration of the following facts, from personal knowledge, all in support of her motion that seeks fees, costs, and interest following an Individuals with Disabilities Education Act ("IDEA") due process proceeding and the instant action. The "base language" for this declaration, which I am reviewing and modifying as necessary for this matter, comes from my initial declaration in *N.G. et al. v. New York City Dept. of Educ.* (S.D.N.Y. 1:21-cv-08488-PGG) and reply declarations in *E.W. et al. v. New York City Dept. of Educ.* (S.D.N.Y. 1:21-cv-11208-VEC-GWG); and additions or differences from my *N.G.* declaration are underlined herein for the Court's convenience and understanding of how case-specific time was spent. Matters of my personal knowledge from the Complaint are being incorporated as "base language".

2.     I keep contemporaneous time records via software stated as being for such purposes; and have reviewed my entries of the same as produced with the Declaration of Andrew K. Cuddy. Such entries are an accurate reflection of my time for the associated tasks as itemized therein.

1

3.      I have also reviewed the summation of my experience and qualifications in Mr. Cuddy's declaration (¶ 18), and such summation is an accurate reflection of my experiences and qualifications.

4.      I am fully familiar with the briefing across these and prior federal actions for our Firm's clients, including the time that it takes to complete new briefing and reply in light of each new decision and the difficulties being encountered. In addition to representing families on both substantive and fee-related issues at the district court level, among various unsolicited circumstances,[1] I have become the drafter for four out of the first six fee appeals by our Firm's clients, lead counsel for what are now the other appeals being heard in tandem, and—by virtue of trying to trim the latter role and its burden on the Court above—drafter of R&R objections. I am intimately familiar with which evidence has been—whether consistently or inconsistently—accepted in part or whole, rejected, or unaddressed.

5.      **To be perfectly, respectfully, and bluntly clear,** as an officer of both this Court and the Court immediately above: (i) I take the duty to alleviate and prevent the burden on both seriously; (ii) I take representation and protection of my clients and their children seriously; and (iii) absent settlement on fee cases (which I would prefer most), I would otherwise like nothing more than to be able to have a fee petition that—including exhibits—is less than twenty pages, in order to return to accepting new intakes for the administrative level.

6.      In my experience, it has been and remained a time-consuming endeavor to identify and provide the type and form of evidence—by process of elimination of items the Court has stated

---

[1] *I.e.,* having the earliest of the *circa* 2020 cases that DOE did not settle, having the first of our clients who elected to appeal, early and subsequent attempts to reduce time and improve evidence from my starting points, preventing/reducing repetition between appeals as more clients elected to do so, Britton Bouchard's departure from our Firm, etc.

are not helpful and inclusion of what the Court has suggested it wants to see—that we believe have been at least suggested as acceptable. For example, early fee petitions began with declarations of local practitioners based upon their use in case law, and each time a Court stated that a declaration should (*e.g., Johnson* factors) or should not (*i.e.,* isolated incidents) indicate certain things, our Firm asked for those who could address their experiences and observations in such manners. It has also been my experience that, after receiving declarations from local practitioners that discuss the *Johnson* factors and submitting those declarations, those declarations have been rejected with a statement that they did not address the *Johnson* factors.

7.  In my opinion, it is less time-consuming and less costly in the long-term and more likely to reach expedient resolution on questions such as the "prevailing rate in the community" to find evidence alternative to what has already been provided—as M.B. has done—than to have fee decisions accumulate until a more "bright line" rule is announced to measure when *Johnson* factor testimony, rate surveys, statistics, etc. reach "sufficient" status. As a caveat to that, I note that I would not want to be the attorney who drops all declarations and more traditional forms of fee petition evidence in favor of an alternative type of evidence, to later learn from a separate case's appeal that the most recent form of declaration that I would have otherwise used is deemed "sufficient".

**This Action**

8.  I began to assist on this case in November of 2022, when Ms. Murray began preparing for her temporary leave. At that time, there was some question remaining over whether implementation had been completed, and whether the complaint would be amended, which of course, it was not. Any time even discussing the possibility of an amended complaint was "no-charged".

9.  <u>Once Ms. Murray was on maternity leave, much of my time was not billed, as we were primarily confirming authorization for the vocational assessment and getting billing records to the New York City Law Department so that the DOE could make an offer. Final confirmation of made in January 2023 of the authorization, which the provider indicated was issued in December 2022. Billing was provided to DOE in mid-January 2023.</u>

10. <u>The parties engaged in some settlement discussions throughout March 2023; however, do eventually withdrew from settlement discussions and requested a stay of this action, which was denied, with DOE's subsequent objection to the denial overruled and request for reconsideration denied.</u>

**Motion Papers**

11. As a particular example of the difficulty in <u>Andrew</u> Cuddy's declaration for <u>this</u> action, I have reviewed several decisions where the statement of Mr. Cuddy's qualifications—when previously provided in the same way to different courts—range from stating only his year of admission, all the way to addressing his hundreds of hearings, his speaking engagements, his authored book, and the details and structure of our Firm. These discrepancies have typically been correlated to the rate assigned to him and, by way of downward scaffolding, the rates assigned to everyone else.

12. These discrepancies have not typically stopped at just Mr. Cuddy's qualifications, but have extended to findings that, when two timekeepers' qualifications appear on the same page, one is acknowledged and the other is not. From my perspective, this is not simply a matter of whether to use information, but how to ensure that the Court notices and uses it.

13. <u>Additional evidence has been found of the market rates currently prevailing in the Southern District of New York, significant portions of which have either not been addressed previously in</u>

4

decisions or have been addressed piecemeal. In preparing the current motion for M.B., I have taken further efforts (as indicated above) to address apparent concerns in recent decisions and during oral arguments in the tandem appeals. The recent surveys have been able to provide a greater picture of the current free landscape, which is corroborated by various independent sources that have also been recent enough and separate enough to lend greater clarity. Charts concerning one survey were already included therein, and charts concerning the other two or appended to M.B.'s memorandum of law.

14.     In addition to mapping the rate statistics across the studies found and to the other evidence provided, I conducted queries of the artificial intelligence tool currently known as ChatGPT- 4, concerning its knowledge of the legal industry, including rates that clients might expect to be charged by attorneys, as well as questions those clients might ask in order to determine how rates and the ultimate amount of fees might be impacted by various factors specific to a case. The intent was to provide context to what a parent—having ChatGPT-4 open and available to them—might take away in researching whether to hire an attorney and who to accept or reject. My questions and ChatGPT-4's responses are **Exhibit A** hereto.

15.     ChatGPT-4 was careful to note that several factors can influence what an attorney charges and on multiple occasions encouraged the user to reach out to legal services and law firms, as well as consult publications in the legal industry. However, it did note as of a knowledge cut off in September 2021, ChatGPT-4 had that an associate attorney with one to three years of experience in New York City could charge anywhere from 200 to 500 per hour, with caution that such range was a broad estimate That could be affected by size and prestige of their firm complexity of a case and a specialty. I note that part of that particular response included the statement, "Lawyers who specialize in a certain type of law open (such as special education law, in this case) may command

higher rates." Ex. A at 1. At another point, ChatGPT-4 indicated that an attorney with 25 years of experience word command a "premium rate" for IDEA matters and estimated that "a reasonable hourly rate might be in the range of 600 to 1200 or even more", noting that "this is a broad estimate and actual rates could be higher or lower based on various factors". Ex. A at 6.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of May, 2023.

                                              s/ Benjamin M. Kopp
                                              BENJAMIN M. KOPP, ESQ.