```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
M.B., individually and on behalf of K.B., a child with a               :
disability,                                                            :
                                                                       :
                                Plaintiff,                             :
                                                                       :
                -v-                                                    :  22 Civ. 6405 (JPC) (SN)
                                                                       :
NEW YORK CITY DEPARTMENT OF EDUCATION,                                 :  ORDER ADOPTING
                                                                       :  REPORT AND
                                Defendant.                             :  RECOMMENDATION
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

This action arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), a statute ensuring that "all children with disabilities have available to them a free appropriate public education," *id.* § 1400(d)(1)(A).

Plaintiff M.B. commenced the instant action against the New York City Department of Education (the "DOE"), alleging that the DOE had failed to implement an administrative order requiring, *inter alia*, that the DOE fund an independent vocational assessment for Plaintiff's son, K.B., who has disabilities. Plaintiff thus sought an order mandating the DOE's implementation of the administrative order and further sought attorneys' fees and costs under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3). The parties resolved the issue as to the DOE's funding an independent vocational assessment without the Court's intervention but were unable to reach a settlement on the issue of attorneys' fees. Plaintiff, through counsel at the Cuddy Law firm, thus filed a motion for attorneys' fees and costs, seeking a total amount of $52,837.95, as well as post-judgment interest on that amount pursuant to 28 U.S.C. § 1961. The DOE opposed. In replying, Plaintiff updated the total requested amount to $70,282.95.

On January 24, 2024, the Honorable Sarah Netburn issued a Report and Recommendation, in which Judge Netburn recommended granting in part Plaintiff's motion and awarding attorneys' fees and costs in the total amount of $19,174.40, as well as post-judgment interest. Plaintiff timely filed objections, to which the DOE responded. For the reasons below, the Court overrules Plaintiff's objections and adopts the Report and Recommendation in its entirety.

## I. Background

**A.     Factual and Procedural Background[1]**

At the time of the underlying administrative action, K.B. was eighteen years old and had been attending Winston's Transitions Program, a specialized private school. Michael Cuddy Decl. ¶ 5; *see also* Dkt. 46-1 ("Due Process Complaint") at 2-3. Through an earlier settlement, the DOE had funded K.B.'s attendance there for the 2019-2020 school year. Michael Cuddy Decl. ¶ 7. While that case was pending, the DOE's Committee on Special Education convened and prepared K.B.'s individualized educational program ("IEP") for the upcoming 2020-2021 school year, which provided for K.B.'s placement in a non-specialized public high school. *Id.* ¶ 9; Due Process Complaint at 4. On June 21, 2020, Plaintiff filed a due process complaint notice and requested a hearing before an impartial hearing officer ("IHO"), challenging the adequacy of that 2020-2021 IEP. *See generally* Due Process Complaint. Specifically, Plaintiff contested, *inter alia*, the IEP's post-secondary transition goals, the determination of K.B.'s "least restrictive environment," and the transitional support for a change of placement for K.B. Michael Cuddy Decl. ¶ 10. Plaintiff sought, among other relief, continued funding of K.B.'s placement Winston's Transitions Program

---

[1] The Court assumes the parties' familiarity with the Report and Recommendation and so provides only a summary of the factual background, drawing from declarations filed by Michael Cuddy, Dkt. 46 ("Michael Cuddy Decl."), and Andrew Cuddy, Dkt. 47 ("Andrew Cuddy Decl."), in support of Plaintiff's motion for attorneys' fees, as well as the exhibits attached thereto.

(where Plaintiff had unilaterally determined K.B. should stay) and an independent vocational assessment. *Id.* ¶ 11; *see also* Due Process Complaint at 6-7.

At the due process hearing on February 10, 2021, the DOE conceded the denial of the FAPE, but reserved its right to challenge the appropriateness of Winston Preparatory and any equitable arguments raised by Plaintiff. Michael Cuddy Decl. ¶ 20. On April 1, 2021, the IHO issued a decision awarding Plaintiff full relief. *See generally* Dkt. 46-4 (the IHO's order). The DOE did not appeal the decision. Michael Cuddy Decl. ¶ 23.

On July 27, 2022, Plaintiff commenced the instant action, alleging that the DOE had failed to fund K.B.'s independent vocational assessment as mandated by the IHO. Plaintiff thus sought an order directing that the DOE immediately comply with the IHO's order, as well as attorneys' fees and costs. *See generally* Dkt. 1. On December 19, 2022, the DOE answered, Dkt. 12, and the next day the Court scheduled an initial pretrial conference for January 24, 2023, Dkt. 13.

On January 11, 2023, Plaintiff requested adjournment of that conference, explaining that the parties had resolved the matter as to the vocational assessment, and that the DOE had proposed a settlement offer with respect to the requested attorneys' fees and costs. Dkt. 15. The undersigned adjourned the conference and subsequently referred the matter to Judge Netburn for general pretrial supervision, including settlement. Dkt. 16. On March 24, 2023, the DOE informed the Court that the parties were unable to reach a settlement and that the case "must inevitably proceed to briefing." Dkt. 25. Then, on April 20, 2023, the undersigned amended the earlier referral to Judge Netburn to include the issuance of a report and recommendation on the anticipated fees motion. Dkt. 36.

On May 19, 2023, Plaintiff filed her motion for attorneys' fees and costs, requesting a total amount of $52,837.95. Dkt. 49 ("Motion"). The DOE filed its opposition on June 20, 2023, urging that Plaintiff was entitled to a total award of no more than $7,537.24. Dkt. 53. In replying on July

3

11, 2023, Dkt. 59, Plaintiff updated her total requested amount to $70,282.95—consisting of $69,767.50 in fees and $515.45 in costs.  *See* Dkt. 58.

On February 7, 2024, Judge Netburn issued a Report and Recommendation, in which she recommended partially granting Plaintiffs' motion by reducing the fees award from $69,767.50 to $18,740.55 and costs from $515.45 to $433.85.  Dkt. 60 ("R&R") at 1.  With respect to the attorneys' fees, Judge Netburn—considering, among other factors, the prevailing rates within the Southern District of New York, the nature of the Cuddy Law Firm's longstanding relationship with Plaintiff, and the relative simplicity of both the administrative and federal actions, *id.* at 6-9—determined that the following hourly rates were reasonable:

- A rate of $380 per hour for Michael Cuddy, who, when he was serving as the attorney for the underlying administrative component of this matter, had roughly fourteen years of experience in IDEA litigation, *id.* at 10;

- A rate of $380 per hour for Andrew Cuddy, who, when he was supervising both the administrative and federal components of this matter, had more than twenty-three years of experience in IDEA litigation, *id.*;

- A rate of $250 per hour for Benjamin Kopp, who at the relevant time had two years of experience in general litigation and five additional years of experience in IDEA litigation, with respect to his legal work on the federal component of this matter, *id.* at 11;

- A rate of $200 per hour for Erin Murray, who, when she was involved in the federal component of this matter, had two years of legal experience, *id.* at 11-12;

- A rate of $125 per hour for Benjamin Kopp with respect to his paralegal work on the matter;

4

- A rate of $125 per hour for Shobna Cuddy, who has been a paralegal with the Cuddy Law firm for over ten years, *id.* at 12-13; and

- A rate of $100 per hour for each of Cailin O'Donnell and ChinaAnn Reeve, who respectively had four years and two years of paralegal experience, *id.* at 13.

As to the number of the hours expended, Judge Netburn first applied a fifteen percent reduction in the total hours spent on the administrative action, finding the billed hours excessive with respect to the time spent on drafting the due process complaint and producing administrative billing statements, and finding problematic multiple billing entries for 0.1 hours. *Id.* at 13-15. For the number of hours spent on the federal action, Judge Netburn found excessive only the hours concerning motions practice, based on the thirty-one hours spent on preparing the fees motion and the twenty-six hours drafting the reply brief, and thus recommended no reduction in the pre-motion hours. *Id.* at 17. Furthermore, Judge Netburn recommended limiting the fee award to those fees for hours accrued before the DOE made a settlement offer $23,000 on March 17, 2023, finding the absence of substantial justification for Plaintiffs' rejection of that offer, which was only $2,200 lower than Plaintiff's counteroffer. *Id.* at 19. Judge Netburn further found no unreasonable protraction of the proceedings on the part of the DOE. *Id.* at 19-20. Turning to costs, Judge Netburn recommended reducing the fifty cent per page rate for printing costs to ten cents per page. *Id.* at 20. Lastly, Judge Netburn recommended granting Plaintiff's request for post-judgment interest. *Id.*

On February 7, 2024, Plaintiff timely objected to the Report and Recommendation, Dkt. 61 ("Objections"), and the DOE responded two weeks later, Dkt. 63.

## II. Legal Standards

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation, and must

5

conduct *de novo* review of any part of the magistrate judge's disposition to which a party submits a proper objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "To be proper, an objection must be clearly aimed at particular findings, and may not be conclusory or general." *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks and citations omitted). "Parties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance." *Id.* (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). On the other hand, a district court reviews for clear error those parts of a report and recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability," based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)-(C). To determine the amount of a prevailing party's fee award, a court calculates a "presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (citation omitted). In determining reasonable fees awards, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### III.  Discussion

Plaintiff objects to the (1) recommended hourly rates, both broadly as to Judge Netburn's consideration of prevailing market rates and the complexity of the actions and specifically as to the rates determined for Benjamin Kopp, Erin Murray, and Cailin O'Donnell, *see* Objections at 1-7; (2) the recommended reductions to the hours spent both in the underlying administrative proceedings and in the instant federal action, *id.* at 7-9; and (3) the limitation on the award to those fees accrued before the DOE made its settlement offer, *id.* at 10.  As discussed below, not all these objections warrant *de novo* review.

**A.    Reasonableness of Requested Rates**

To calculate a "presumptively reasonable fee," a district court first determines the appropriate billable hours expended and sets a "reasonable hourly rate." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)); *accord R.G. v. N.Y.C. Dept. of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019).  "[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (quoting *Lilly*, 934 F.3d at 231).  When determining a reasonable hourly rate for an attorney or paralegal, courts consider both the prevailing market rates for such legal services, as well as the case-specific factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's

7

customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) (citation omitted). A court need not make specific findings as to each factor, so long as it considers all of them when setting the fee award. *See, e.g.*, *R.G.*, 2019 WL 4735050, at *2.

### 1. Prevailing Market Rates

Plaintiff contends that Judge Netburn, in considering the prevailing market rates of attorneys with similar skill and experience in comparable matters, failed to apply a "wholistic" review of the proffered evidence—including one of the many attached attorney declarations, as well as comparative surveys and report—and further conflated ChatGPT's "hallucination of non-existent judicial opinions" with "the expectations that it provides consumers." Objections at 6-7. These objections are wholly without merit. Judge Netburn plainly considered the evidence provided by Plaintiff in her determination of the prevailing market rate, *see* R&R at 6-8, and Plaintiff's objection boils down to an argument that Judge Netburn either failed to address individually every submission Plaintiff attached to her motion or rejected Plaintiff's arguments as to the relevance of these submissions. These broad, conclusory, and redundant objections do not warrant the Court's *de novo* review. And the Court further discerns no error—clear or otherwise—in Judge Netburn's thorough consideration of Plaintiff's submissions alongside the rates deemed reasonable in the myriad IDEA fees cases litigated in this District in assessing the prevailing market rate. *See* R&R at 6-8.

### 2. Complexity

Next, Plaintiff argues that Judge Netburn's consideration of the complexity of the underlying proceedings, as well as the novelty and difficulty of the issues raised, in the instant

8

Report and Recommendation is inconsistent with her consideration of that *Johnson* factor in a prior decision, *N.L. v. New York City Department of Education*, and with the "general understanding of these concepts." Objections at 2-3. This objection is nonsensical.

In *N.L.*, Judge Netburn found that the "novelty and difficulty" factor weighed in favor of a higher award because there, unlike here, "the DOE contested [the] [p]laintiff's claims and mounted a defense" and "the hearings occurred over multiple days spanning many months." No. 23 Civ. 11215 (LGS) (SN), 2023 WL 2872624, at *4 (S.D.N.Y. Jan. 20, 2023), *report and recommendation adopted as modified* by 2023 WL 2523636 (S.D.N.Y. Mar. 15, 2023). Although true that the underlying administrative proceedings both in *N.L.* and in the instant matter required the plaintiff to demonstrate the appropriateness of a unilateral placement, here (as Judge Netburn described), the underlying due process hearing lasted merely one hour and twenty-one minutes, and the DOE presented no defense, even conceding that it had denied K.B. a FAPE, *see* R&R at 2; Dkt. 46-2. Accordingly, Judge Netburn determined that the "novelty and difficulty" factor under the present circumstances weighed in favor of a lower award. *Id.* at 9. This determination is entirely consistent with that in *N.L.*

Additionally, Plaintiff appears to object to Judge Netburn's determination on the complexity of the administrative proceedings by arguing that the DOE's lack of a defense reflects the merits of Plaintiff's due process claim and thus supports a higher award, *see* Objections at 3 (quoting, without contextualizing, aspects of *M.D. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 2417 (JMF), 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018)). Yet Judge Netburn plainly considered that distinct factor as well, explaining that Plaintiff's "w[inning] all of the relief sought in her initial due process complaint" counseled in favor of setting a relatively high hourly rate in this case. R&R at 9. In a similar vein, to the extent Plaintiff is objecting to Judge Netburn's "complexity" analysis for her failure to consider the "skill, knowledge, and diligence of a thirty-plus-year attorney such

9

as Michael Cuddy," Objections at 2-3, the Court notes that "the experience, reputation, and ability of the attorneys" is a distinct factor that Judge Netburn too expressly considered. *See* R&R at 8-9 (explaining that the Cuddy Law firm is "considered to be among the leaders in the IDEA field, particularly for families who rely on fee-shifting" (citation omitted)).

Plaintiff's remaining objections to Judge Netburn's determination on the complexity of the underlying proceedings are barely comprehensible, conclusory, and further fail to warrant this Court's *de novo* review. *See, e.g.*, Objections at 3 (positing that "[c]ontrary to the [Report and Recommendation], if the unilateral placement only 'slightly' elevated the difficulty, it would not be considered a 'burden' of proof for the parent, who needed a skilled attorney to assist"). The Court once again finds no error in Judge Netburn's comprehensive analysis of various *Johnson* factors implicated in Plaintiff's objections, which are overruled.

### 3. Individual Rate Determinations

Plaintiff further objects to the individual rate determinations as to Benjamin Kopp, Erin Murray, and Cailin O'Donnell.

As to Benjamin Kopp, Plaintiff challenges the $250 hourly rate awarded by Judge Netburn principally because that rate is lower than the rate awarded another Cuddy Law Firm attorney in another case, but with similar years of experience. Objections at 3-4. As to Erin Murray, Plaintiff objects to Judge Netburn's mere citation to a case decided in 2018 because, in Plaintiff's view, the range of rates in that case "is rendered obsolete by [] the [Report and Recommendation's] acknowledgement that rates are now higher than cited" in other earlier cases. *Id.* at 4. As to Cailin O'Donnell, Plaintiff objects to the rate set because she was given higher rates before. *Id.* at 5. Lastly, Plaintiff states that "it is untrue that M.B. does not provide evidence that any of the paralegals have formal paralegal training or degrees"—presumably in response to Judge Netburn's observation concerning the absence of any evidence that the any of the paralegals have formal

10

paralegal training or formal paralegal degrees, R&R at 12—and directs the Court to the submitted resumes. *Id.* at 5.

Initially, Plaintiff appears to suggest that a Court errs *as a matter of course* by setting a rate that is lower than a rate set for the same (or comparable) attorney (or paralegal) in a previous year—especially given that the same attorney has since gained more experience. *See, e.g.*, Objections at 3 ("On a strict-experience basis, $300 to Mr. Kopp (admitted 2016, at [the Cuddy Law Firm] 2018) in 2024 would be expected based upon the same award to Mr. Coretti (admitted 2012, at [the Cuddy Law Firm] 2016) in 2021 . . . ."), 5 (asserting that the Report and Recommendation "does not justify lowering paralegal rates to $100, given that they have been awarded higher rates with greater experience" and citing cases awarding $125 to Cailin O'Donnell). That objection is premised on an utter miscomprehension of the case-specific nature of the reasonableness inquiry. To be sure, hourly award determinations in other cases are relevant to assessing the reasonableness of rates requested by attorneys practicing (or paralegals working) in the same District, as discussed at *supra* III.A. And the amount of experience an attorney (or paralegal) possesses, along with the time value of money, also informs a Court's assessment. But experience level and awards in comparable cases—which factors Plaintiff misguidedly suggests are dispositive—comprise only two of the twelve *Johnson* factors, *see G.B. ex rel. N.B.*, 894 F. Supp. 2d at 428, and are to be considered in conjunction with the others. Plaintiff's objections predicated on the misguided contention that courts are mechanically bound by prior rate determinations are overruled.[2]

---

[2] For the same reason, Plaintiff's broad contention that the rates are unreasonable in light of the undersigned's prior hourly rate determinations in *Y.S. v. New York City Department of Education* is unavailing. No. 21 Civ. 5878 (JPC) (S.D.N.Y.), Dkt. 89 (December 6, 2023 oral ruling on fees motion). It is true that the undersigned also found the federal action in *Y.S.* to be straightforward. *Id.* at 26:23-24. There, the plaintiff sought an order directing the DOE's

Plaintiff does not explain the consequence of Judge Netburn's ancillary citation to a purportedly "obsolete" 2018 case—which is provided in a string citation and is preceded by citations to two 2022 cases awarding Murray a $200 hourly rate, *see* R&R at 12—on the reasonableness of Judge Netburn's rate determination for Murray. That objection is thus overruled.

Finally, the Court has reviewed the resumes of the paralegals that worked on this case, and sees no evidence that they have formal paralegal training or paralegal degrees—as Judge Netburn also found, *see* R&R at 12. *See* Dkt. 47-2 (resumes of attorneys and paralegals at the Cuddy Law Firm). Plaintiff's objection on this score is overruled.

In sum, the Court discerns no error in Judge Netburn's determination of reasonable hourly rates for the attorneys and paralegals involved in this matter. Even analyzing the reasonableness of the requested rates here *de novo*, the Court arrives at the same determinations for the very reasons set forth in Judge Netburn's well-reasoned Report and Recommendation.

**B.     Reasonableness of Hours**

The Court next turns to Plaintiff's objections to Judge Netburn's determinations on the number of hours reasonably expended in the underlying administrative proceedings and in the instant federal action. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Whether a

---

immediate placement of the plaintiff's child in a school as designated in the child's IEP. *Id.* at 3:25-4:5. The litigation entailed the plaintiff's filing of a complaint, pursuit of a certificate of a default against the DOE, briefing on the IDEA's exhaustion requirement, briefing on a stay request, and then briefing on the fees motion. *Id.* at 4:6-5:21. In contrast, the instant federal action entailed the filing of a complaint, briefing on a stay request, and briefing on the fees motion. The instant action is even more straightforward than *Y.S.* and is thus distinguishable on that ground alone.

case was "particularly complicated" or involved any "significant" legal issues may be considered in determining the reasonable number of hours a case requires. *See, e.g.*, *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011). Ultimately, courts have "ample discretion" in assessing the "amount of work that was necessary to achieve the results in a particular case." *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *10 (S.D.N.Y. Sept. 5, 2013) (quoting *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992)), *aff'd*, 584 F. App'x 17 (2d Cir. 2014).

### 1. Underlying Administrative Proceedings

In contesting Judge Netburn's determination on the reasonable hours expended on the underlying administrative proceedings, Plaintiff objects to the findings on (1) the amount of time it took Michael Cuddy to edit and update K.B.'s due process complaint, (2) the excessiveness of billing time for producing and reviewing billing statements, and (3) various time that was billed in 0.10-hour increments. Objections at 8-9.

Plaintiff contends that Judge Netburn erred in finding that Michael Cuddy spent 9.2 hours "edit[ing] and updat[ing]" K.B.'s prior due process complaint for use in the underlying administrative proceedings in this case, because he only billed for 5.9 hours actually drafting and revising the complaint. *Id.* at 8. Specifically, Plaintiff faults Judge Netburn for including the 3.3 hours that Michael Cuddy spent reviewing records in preparation for drafting the complaint in the 9.2-hour total. *Id.*; *see also* R&R at 14. The Court sees no error in Judge Netburn's characterizing record review as part of the process of editing and updating a prior document. As Judge Netburn explained, the Cuddy Law Firm "had already drafted a very similar due process complaint on K.B.'s educational issues for the prior school year," and "many" of the "facts and arguments were unchanged" in the due process complaint in this case. R&R at 14; *id.* ("It should not have taken

13

an experienced lawyer 9.2 hours to edit and update a prior due process complaint."). This Court certainly agrees that 9.2 hours for this process—even including record review—was excessive.

As to Judge Netburn's determination that the 4.1 hours expended to produce and review billing statements in connection with the underlying administrative proceeding was excessive, Plaintiff asserts only:

> The [Report and Recommendation] incorrectly assumes "clean-up" of billing, relying on stating the cumulative time needed across five instances to work through the process that DOE demands, as well as find where discretionary reductions can be made in good faith for expedient resolution.

Objections at 8. The Court overrules this objection, the precise nature of which the Court is unable to discern. And in any event, this Court shares Judge Netburn's view that billing 4.1 hours of attorney and paralegal time to produce and review administrative billing statements was excessive. *See* R&R at 14.

Next, Plaintiff faults Judge Netburn for "appl[ying] the incorrect standard of [sic] '0.1' entries." Objections at 9. Plaintiff mounts three objections to Judge Netburn's analysis. None are availing. First, Plaintiff claims that its June 23, 2020 billing entry for 0.1 hours of work performed by Michael Cuddy—which Judge Netburn characterized as "a 0.1-hour time entry to receive and review a new hearing request and write down relevant contact information in a case file," R&R at 15—was proper because it implicated "several interrelated tasks concerning initiation of the hearing that altogether probably took even longer than just six minutes," Objections at 9. *See* Dkt. 59-1 at 6. The notion that a combination of (1) reviewing a notice of a new hearing request, (2) noting that request and calendaring it, (3) reviewing a notice of appearance—which is perhaps the most rote form of court filing—and (4) writing down contact information from that notice took six minutes strains credulity, particularly for an attorney as experienced as Michael Cuddy.

Relatedly, Plaintiff contends that Judge Netburn failed to account for what it characterizes as the "second requirement" of the proper analysis for 0.1-hour time entries, *id.*, in reference to a prior decision of Judge Netburn's in which she stated that 0.1-hour entries "become excessive when an attorney on a single day bills multiple 0.10 hour entries for discreet tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total appear likely to have occupied less than the sum total of the 0.10 hour increments." *N.L.*, 2023 WL 2872624, at *6 (cleaned up). While Plaintiff fails to specify which time entries are implicated by this ostensible error, to the extent that Plaintiff meant to refer to the June 23, 2020 billing entry—for which it points out that the tasks detailed above were "followed by a communication with the unilateral placement," Objections at 9—that entry only undermines Plaintiff's point. The fact that Michael Cuddy billed six minutes just to "[r]eceive[] and review[]" a single e-message further illustrates the excessive nature of the Cuddy Law Firm's billing practices, both specifically on June 23, 2020 and generally.

Finally, Plaintiff makes much of Judge Netburn characterizing "e-messages" as text messages, Objections at 9, but the import of this distinction remains unclear. The Court thus overrules Plaintiff's objections to the 0.10-hour billing entries.

The Court discerns no error in Judge Netburn's recommendation to reduce the total hours expended on the administrative action by fifteen percent. Further, after reviewing the record in this case, including the time entries, this Court on *de novo* review arrives at the same overall reduction for the same reasons set forth in the Report and Recommendation.

### 2. Federal Action

Plaintiff also objects to Judge Netburn's determination that the hours billed with respect to the fees motion were excessive. Objections at 7. These fees accrued after the DOE's settlement offer on March 17, 2023. Given the Court's conclusion immediately below—finding no error in

15

Judge Netburn's recommendation to limit the fees award to those the fees that accrued up until March 17, 2023—the Court overrules Plaintiff's objection as moot.

**C.     Settlement Offer**

Under IDEA's fee-shifting provisions, a court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). "Under those circumstances, a parent may only recover post-settlement offer fees if the parent 'was substantially justified in rejecting the settlement offer.'" *M.R. v. N.Y.C. Dep't of Educ.*, No. 21 Civ.5503 (VEC), 2022 WL 16575767, at *4 (S.D.N.Y. Oct. 31, 2022) (citing 20 U.S.C. § 1415(i)(3)(E)).

Based on the lodestar analysis described *infra* at III.A & B, Judge Netburn found that, as of March 17, 2023 (the date of the DOE's settlement offer), the Cuddy Law Firm had reasonably accrued $18,740.55 in attorneys' fees. *See* R&R at 18. This amount is "not more favorable to the parent[s]" than the DOE's offer of $23,000, and thus triggers the IDEA's limitation on recoverable fees. With respect to this limitation, Judge Netburn determined that M.B. had failed to provide "evidence justifying her denial of the DOE's settlement offer" and further noted that her counteroffer was only $2,200 greater than the DOE's settlement offer. R&R at 19.

In objecting to this conclusion, Plaintiff raises the same arguments as before Judge Netburn. *Compare* Objections at 10 (referring to communications between counsel "spell[ing] out the precise areas of disagreement between the parties, as well as the then-current decisions") *with* Dkt. 59 (reply brief) at 10 (referring to the same communications reflecting Plaintiff's concerns and Plaintiff's believe based on the "then-pending cases [that] made it all the more reasonable for her to believe" that she would be entitled to a higher fee award by the Court). Judge Netburn's rejection of Plaintiff's proffered justification—*i.e.*, general disagreements as to the settlement and

16

Plaintiff's belief that she was entitled to a higher award based on decisions that had been issued around that time—was not clearly erroneous.  Plaintiff's objection is thus overruled.  Moreover, even reviewing the issue *de novo*, the Court reaches the same conclusion.

**D.     Remainder of Report**

As to the remainder of the Report to which Plaintiff did not raise any objections, the Court finds no clear error in the record.  Indeed, the Court has conducted *de novo* review of the entire Report and Recommendation, and finds it to be well-reasoned and its conclusions well-founded.  Accordingly, the portions of the Report and Recommendation to which Plaintiff did not object are adopted as well.

## IV.  Conclusion

For the reasons above, the Court adopts the Report and Recommendation in its entirety.  Plaintiff is awarded $18,740.55 in fees and $433.85 in costs, for a total award of $19,174.40, as well as post-judgment interest pursuant to 28 U.S.C. § 1961.  The Clerk of Court is respectfully directed to enter judgement accordingly and to close this case.

SO ORDERED.

Dated: March 30, 2024
       New York, New York

JOHN P. CRONAN
United States District Judge